IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| TED SHARPENTER, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ROCKWELL COLLINS, INC., ANTHONY J. CARBONE, CHRIS A. DAVIS, RALPH E. EBERHART, JOHN A. EDWARDSON, RICHARD G. HAMERMESH, DAVID LILLEY, ROBERT K. ORTBERG, ANDREW J. POLICANO, CHERYL L. SHAVERS, JEFFREY L. TURNER, JOHN T. WHATES, UNITED TECHNOLOGIES CORPORATION, and RIVETER MERGER SUB CORP.,<br><br>Defendants. | Case No. 1:17-cv-00113-MWB<br><br>JURY TRIAL DEMANDED<br><br><u>CLASS ACTION</u> |

## **COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### **NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on September 4, 2017 (the "Proposed Transaction"), pursuant to which Rockwell Collins, Inc. ("Rockwell" or the "Company") will be acquired by United Technologies Corporation ("Parent") and its wholly owned subsidiary, Riveter Merger Sub Corp. ("Merger Sub," and together with Parent, "UTC").

2. On September 4, 2017, Rockwell's Board of Directors (the "Board" or "Individual

Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with UTC. Pursuant to the terms of the Merger Agreement, shareholders of Rockwell will receive $93.33 in cash and a portion of a share of Parent's common stock having a value equal to the quotient obtained by dividing $46.67 by the average of the volume-weighted average prices per share of Parent common stock on the New York Stock Exchange for each of the 20 consecutive trading days ending immediately prior to the closing date, subject to a two-way 7.5% collar centered on Parent's August 22, 2017 closing share price of $115.69.

3. On October 10, 2017, defendants filed a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the

2
Case 1:17-cv-00113-LTS   Document 2   Filed 10/20/17   Page 2 of 16

transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Rockwell common stock.

9. Defendant Rockwell is a Delaware corporation and maintains its principal executive offices at 400 Collins Road N.E., Cedar Rapids, Iowa 52498. The Company's common stock is traded on the NYSE under the ticker symbol "COL."

10. Defendant Anthony J. Carbone ("Carbone") has served as a director of Rockwell since 2001.

11. Defendant Chris A. Davis ("Davis") has served as a director of Rockwell since 2002.

12. Defendant Ralph E. Eberhart ("Eberhart") has served as a director of Rockwell since 2007.

13. Defendant John A. Edwardson ("Edwardson") has served as a director of Rockwell since 2012.

14. Defendant Richard G. Hamermesh ("Hamermesh") has served as a director of Rockwell since April 2017.

15. Defendant David Lilley ("Lilley") has served as a director of Rockwell since 2008.

16. Defendant Robert K. Ortberg ("Ortberg") has served as a director of Rockwell since 2013, and is Chairman of the Board. Ortberg has also served as President of the Company since 2012 and as Chief Executive Officer ("CEO") of the Company since August 2013.

17. Defendant Andrew J. Policano ("Policano") has served as a director of Rockwell since 2006.

18. Defendant Cheryl L. Shavers ("Shavers") has served as a director of Rockwell since 2002.

19. Defendant Jeffrey L. Turner ("Turner") has served as a director of Rockwell since 2011.

20. Defendant John T. Whates ("Whates") has served as a director of Rockwell since April 2017.

21. The defendants identified in paragraphs 10 through 20 are collectively referred to herein as the "Individual Defendants."

22. Defendant Parent is a Delaware corporation and a party to the Merger Agreement.

23. Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

24. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Rockwell (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

25. This action is properly maintainable as a class action.

26. The Class is so numerous that joinder of all members is impracticable. As of September 1, 2017, there were approximately 174,981,559 shares of Rockwell common stock issued and outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

27. Questions of law and fact are common to the Class, including, among others, (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

4

28. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

29. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

30. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### *Background of the Company*

31. Rockwell supplies cabin interior products and services to aircraft manufacturers and airlines; designs, produces, and supports communications and aviation systems for commercial and military customers; and provides information management services through voice and data communication networks and solutions worldwide. The integrated system solutions and products Rockwell provides to its served markets are oriented around a set of core competencies: communications, navigation, automated flight control, displays/surveillance, simulation and training, integrated electronics and information management systems. The Company also provides a wide range of services and support to its customers through a worldwide network of service

centers, including equipment repair and overhaul, service parts, field service engineering, training, technical information services, and aftermarket used equipment sales.

32. The Company serves a worldwide customer base through its four operating segments: Interior Systems, Commercial Systems, Government Systems and Information Management Services. The Interior Systems business manufactures cabin interior products for the commercial aircraft and business aviation markets. The customer base consists of virtually all of the world's major airlines and aerospace manufacturers.

33. The Commercial Systems segment supplies aviation electronics systems, products and services, as well as aircraft cabin interior products, to customers located throughout the world. The customer base consists of original equipment manufacturers of commercial air transport, business and regional aircraft, commercial airlines and business aircraft operators.

34. The Government Systems segment provides a broad range of electronic products, systems and services to customers including the U.S. Department of Defense, various ministries of defense, other government agencies and defense contractors around the world. These products, systems and services support airborne, precision weapon, ground and maritime applications on new equipment as well as in retrofit and upgrade applications designed to extend the service life and enhance the capability of existing aircraft, vehicle and weapon platforms.

35. The Information Management Services segment provides communications services, systems integration and security solutions across the aviation, airport, rail and nuclear security markets to customers located around the world. The customer base includes commercial airlines, business aircraft operators, the U.S. Federal Aviation Administration ("FAA"), airport and critical infrastructure operators and major passenger and freight railroads.

36. On October 23, 2016, Rockwell entered into an agreement to acquire B/E

6
Case 1:17-cv-00113-LTS   Document 2   Filed 10/20/17   Page 6 of 16

Aerospace, a leading manufacturer of aircraft cabin interior products and services, for $8.3 billion in total consideration. Rockwell completed the acquisition of B/E Aerospace on April 13, 2017.

37. Less than five months after the completion of the B/E Aerospace acquisition, the Board caused the Company to enter into the Merger Agreement with UTC, pursuant to which UTC will acquire Rockwell in the Proposed Transaction.

*The Registration Statement Omits Material Information, Rendering It False and Misleading*

38. Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

39. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.

40. First, the Registration Statement omits material information regarding Rockwell's financial projections and the valuation analyses performed by the Company's financial advisors in connection with the Proposed Transaction, J.P. Morgan Securities LLC ("J.P. Morgan") and Citigroup Global Markets Inc. ("Citigroup").

41. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

42. With respect to Rockwell's financial projections, the Registration Statement discloses certain Rockwell projections for non-GAAP (generally accepted accounting principles)

7

metrics, including EBIT, EBITDA, EBIAT, free cash flow, and unlevered free cash flow, but it fails to provide stockholders with the necessary line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile the non-GAAP projections to the most comparable GAAP measures.

43. To avoid misleading stockholders with non-GAAP financial measures in business combinations such as the Proposed Transaction, publicly traded companies must provide a reconciliation of the differences between the non-GAAP financial measures with the most comparable financial measures calculated and presented in accordance with GAAP. Indeed, defendants acknowledge in the Registration Statement that: "Each of the foregoing metrics (EBIT, EBITDA, EBIAT, free cash flow and unlevered free cash flow) is a non-GAAP financial measure and none of these metrics should be considered as an alternative to operating income or net income as a measure of operating performance or cash flow or as a measure of liquidity." As such, stockholders are entitled to the line item projections used to calculate the Company's non-GAAP projections or a reconciliation of the non-GAAP projections to the most comparable GAAP measures.

44. The Registration Statement also fails to disclose any financial projections of UTC, despite the fact that approximately one-third of the merger consideration that Rockwell's stockholders will receive in the Proposed Transaction is Parent stock.

45. With respect to each of J.P. Morgan's and Citigroup's Discounted Cash Flow Analyses, the Registration Statement fails to disclose: (i) the actual inputs and assumptions underlying the discount rate ranges selected by J.P. Morgan and Citigroup in their analyses; (ii) whether J.P. Morgan's and Citigroup's analyses accounted for any synergies that are expected to result from the Proposed Transaction; and (iii) the terminal exit multiples implied from each

8
Case 1:17-cv-00113-LTS   Document 2   Filed 10/20/17   Page 8 of 16

banker's analysis.

46. With respect to each of J.P. Morgan's and Citigroup's Equity Research Analyst Price Targets, the Registration Statement fails to disclose the individual price targets set by each of the equity research analysts that the bankers relied upon in their analyses.

47. The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) "Opinions of Rockwell Collins' Financial Advisors;" and (ii) "Certain Rockwell Collins Unaudited Prospective Financial Information."

48. Second, the Registration Statement omits material information regarding potential conflicts of interest of the Company's officers.

49. The Registration Statement states that, in connection with the Proposed Transaction, "[t]wo executive officers who are not named executive officers have been granted retention bonus awards equal to $285,000 and $280,000, respectively." The Registration Statement, however, fails to disclose the identity of these executive officers, whether they were involved in the negotiations concerning the Proposed Transaction, and further fails to disclose the timing and nature of all communications regarding these retention agreements, including who participated in all such communications.

50. Further, the Registration Statement indicates that, pursuant to the Merger Agreement, Rockwell may grant annual equity awards in November 2017 to employees of Rockwell, including the executive officers of Rockwell. Additionally, if the completion of the Proposed Transaction occurs on or after November 1, 2018 and prior to February 1, 2019, then Parent will grant equity awards in respect of shares of Parent common stock to employees who received ordinary course restricted stock unit awards in November 2017, including the executive

officers of Rockwell. The Registration Statement, however, fails to disclose any information relating to the timing and nature of all communications regarding these additional equity grants to Rockwell's employees and executive officers, including who proposed these equity grants and who participated in all such communications.

51. The full disclosure of information relating to potential conflicts of interest faced by officers and directors in connection with a merger transaction is necessary to provide stockholders with illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

52. The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) "Background of the Merger;" and (ii) "Interests of Directors and Executive Officers of Rockwell Collins in the Merger."

53. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Rockwell's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Rockwell

54. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

55. The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Rockwell is liable as the issuer of these statements.

56. The Registration Statement was prepared, reviewed, and/or disseminated by the

Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

57. The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

58. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

59. The Registration Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

60. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

61. Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and UTC

62. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

63. The Individual Defendants and UTC acted as controlling persons of Rockwell within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Rockwell and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration

Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

64. Each of the Individual Defendants and UTC was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

65. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Registration Statement.

66. UTC also had direct supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

67. By virtue of the foregoing, the Individual Defendants and UTC violated Section 20(a) of the 1934 Act.

68. As set forth above, the Individual Defendants and UTC had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with

irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: October 20, 2017

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
Brian D. Long
Gina M. Serra
2 Righter Parkway, Suite 120
Wilmington, DE 19803
Telephone: (302) 295-5310
Facsimile: (302) 654-7530

**RM LAW, P.C.**
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305

**BAER LAW OFFICE**

By: */s/ Kimberley K. Baer*
Kimberley K. Baer AT0000683
Baer Law Office
838 5th Avenue
Des Moines, IA 50309
T: (515) 279-2000
F: (515) 279-2137
kbaer@baerlawoffice.com

*Attorneys for Plaintiff*

## CERTIFICATION OF PLAINTIFF

I, Ted Sharpenter ("Plaintiff"), hereby declare as to the claims asserted under the federal securities laws that:

1. Plaintiff has reviewed the complaint and authorizes its filing.

2. Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3. Plaintiff is willing to serve as a representative party on behalf of the class, either individually or as part of a group, and I will testify at deposition or trial, if necessary. I understand that this is not a claim form and that I do not need to execute this Certification to share in any recovery as a member of the class.

4. Plaintiff's purchase and sale transactions in the Rockwell Collins, Inc. (NYSE: COL) security that is the subject of this action during the class period is/are as follows:

### PURCHASES

| Buy Date | Shares | Price per Share |
|----------|--------|-----------------|
| 12/1/16  | 60     | $96.55          |
|          |        |                 |
|          |        |                 |
|          |        |                 |

### SALES

| Sell Date | Shares | Price per Share |
|-----------|--------|-----------------|
|           |        |                 |
|           |        |                 |
|           |        |                 |
|           |        |                 |

*Please list additional transactions on separate sheet of paper, if necessary.*

5. Plaintiff has complete authority to bring a suit to recover for investment losses on behalf of purchasers of the subject securities described herein (including Plaintiff, any co-owners, any corporations or other entities, and/or any beneficial owners).

6. During the three years prior to the date of this Certification, Plaintiff has not moved to serve as a representative party for a class in an action filed under the federal securities laws.

7. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 2nd day of October, 2017.

_____
Ted Sharpenter

2